Yes, thank you. Mr. Chief Justice, may it please the Court. I'd like to reserve five minutes for rebuttal. As the United States government said in its statement of interest in Polanski at page 8, Congress limited coverage for Medicaid for outpatient drugs to those that are for a medically accepted indication in order to both protect public health and the public fisc. Now, medically accepted indications are defined as indications approved by the FDA or supported by citations in one or more of three specified drug references called compendia. If an indication is not approved by the FDA, then it's off-label, and most people are familiar with off-label prescriptions. And Congress didn't say we won't allow, we won't pay for any off-label prescriptions, but we'll only pay for them if there's scientific support for their use for that indication as documented in those drug references known as compendia. Now, this case is about false claims presented for psychiatric drugs, psychotropic drugs given to children and youth on Medicaid that are not for medically accepted indications. And this is causing great harm to children and great expense to the government. There's no real dispute in this case that the general outlines of the off-label prescribing of psychotropic drugs to children and youth is, you know, fairly common. There's been in the media, and there's been concerns raised about that because of the health concerns for the children. It just hasn't been proven to be effective, and these are very dangerous drugs. And the district court dismissed the case on the grounds that this information about industry-wide practices are sufficient to invoke the public disclosure bar. And I'll quote from, it's probably most clearly stated at the excerpt one, but in 21 he says, there's no consensus on this, but a fair reading of the case supports the proposition that where the information and the prior disclosure is sufficient for the government to initiate an investigation against the defendants, and that's my emphasis, the public disclosure bar applies. Well, they didn't really have, the government didn't have information against these defendants, and the jurisprudence in this circuit, and I think really all the circuits, is that one of the material or critical elements that are necessary to trigger the public disclosure bar is the identity of the defendants. Now, the first case that really clearly held that was Affletooney in this court, I think it was 1999, which specifically held that. And then a few, maybe it was earlier than that. Anyway, a few months later in Harshman v. Alcan, this court carved out an exception if the public information identified a narrow class of suspected wrongdoers. And we just don't have that in this case. And I think that this issue has really been authoritatively decided by this court in its previous cases. Now, this applies to all but five of the defendants. And five of the defendants have been and were identified in the public disclosures. But under Bly-McGee, the 2006 case, this court held that the public disclosure bar cannot apply to false claims that occur after the events in the public disclosure. And in this case, all five of those defendants have, you know, four of them have claims, specific prescriptions that are identified. And then the fifth one, Thomson Reuters Healthcare, also has a continuing course of causing false claims. So it just seems to me, my simple way of looking at it, that this court has held that the public disclosure bar cannot be triggered in these circumstances. So I think I'll... Okay, thank you. May it please the court, I am Eric Berlin, representing Walmart, and speaking today in this appeal on behalf of the other defendants as well. The dismissal by the district court based on the public disclosure bar should be affirmed for three reasons. First, plaintiffs admit that their allegations, but for the specific identity of the defendants, was publicly disclosed. Second, the names of those defendants were always readily available to the government. And in fact, we know in this case the government specifically had that. And there is some evidence in the case that the names themselves have been publicly disclosed. Third, and perhaps most important in this case, this simply is not a proper key-tam whistleblower case for the False Claims Act. There's no fraud on the government. The government has not paid more than it should have for substandard products. And in fact, plaintiffs admit that Alaska law specifically permits the claims at issue. And Alaska officials are parties here and have verified that, that these claims are claims that Alaska Medicaid purposefully paid. So what we have is an advocacy group run by plaintiff's counsel with no insider information seeking to accomplish through the False Claims Act what he was unable to accomplish through his more direct state court case, which is to stop the use of psychiatric drugs in adults and children. The court, this court, and indeed in Chief Justice Kaczynski's concurring opinion in the fine case made very clear that the paradigm key-tam case is where you have an insider from a private company coming forward with inside information to assist the government where the government does not have ready access to that information. This is as far from that circumstance, from the paradigm case, as you can get. All of the circuit courts and the Ninth Circuit have recognized that the key-tam provision in the False Claims Act was there and is there to establish a golden mean, to set up the distinction between incentives to get insiders to come forward with information that the government would not have ready access to versus making sure there's no encouragement for parasitic claims. That's the golden mean. If the False Claims Act were to be interpreted as Mr. Godstein urges, the False Claims Act would become the statute that laid the golden egg, not the golden mean. The case can also be affirmed based on the arguments that we made in our Rule 9b and Rule 12b6. Why don't you focus in on the specific argument that Mr. Godstein made here this morning, and he focused specifically on the disclosure bar, specifically on the question of whether or not the government had specific names of these defendants. You said they did, and maybe you can explain what that means. Absolutely, I will do that. I mean, I think it wouldn't be enough if there were names known on a list of 10,000 people that happen to be on the list, they would have to specifically know of these names in connection with this issue, right? That's correct, it can't just be general knowledge of the names, it has to be associated... Otherwise, with the Internet, everybody would know everybody, right? You're precisely correct, Your Honor. So why don't you focus on what there is on the record, on the specific knowledge the government had or could have obtained about the defendants' names. To answer your very precise question, the record shows that the government receives claims data regularly through MSIS. That's required by statute, that the federal government receives Medicaid claims data from the states, and that claims data contains the date of the claim, the age of the Medicaid recipient, the doctor that is prescribing, most importantly here, the medication. The government could have done all what Mr. Gottstein did. Mr. Gottstein proposes that there's some sort of a quantitative test to determine whether enough information has been put forward, but that's not the test at all. The Ninth Circuit and all the other circuits, quite frankly, have made clear that the standard is not how many have been disclosed or what exactly is disclosed, it has the key TAM whistleblower plaintiff ferreted out information that the government did not have ready access to. Here, the government had ready access to the claims data. In fact, they had access to this through the other cases that they brought. The government has tried to make sure that manufacturers are not marketing off-label uses. That is precisely illegal, and that's why the government has gone after those manufacturers. And in order to prove up their case, presumably they've had the claims data because that was an underlying allegation. Here we have no alleged legal conduct. Mr. Gottstein admits it's perfectly fine to have a doctor prescribe off-label. The pharmacies can fill any prescription that is coming, is proper from a doctor. All he did was go and make a FOIA request or several FOIA requests. That's very clear from the relator statement. The relator statement comes right out and acknowledges that Mr. Gottstein and psych rights have no particular knowledge about any of the defendants other than there's one allegation with respect to Dr. Matsui, but that's just hearsay. It comes right out and says in the relator statement, I have no specific knowledge about these. So all that occurred was several Alaska FOIA statements, which in the interim the Supreme Court has clarified are public disclosures. And what appears to happen is Mr. Gottstein just named prominent psychiatrists. We do know from the record that he named, there are three psychiatrists from Juneau that were named. Well, at the time there were only three psychiatrists in Juneau. The government can determine that just as well as Mr. Gottstein can determine that. It's also very important to recognize in this case a key distinction between some of the cases that Mr. Gottstein cites and what's really happening here. Here there's an allegation of per se liability. Any psychiatrist that wrote a prescription for a medication for a minor that was off-label, that was not listed in the compendia is a per se violation of the False Claims Act according to the allegations. You don't need an insider to ferret out that sort of information. You just look at the Medicaid claims data and say anyone who's written these prescriptions is per se liable under the False Claims Act. Now, we don't agree at all with that underlying theory, and that's explained in the briefs. But the point that you asked for and it was raised is what is the information out there that would point the government to this? And I understood the question is also why does that matter? Okay, thank you. I only wanted to comment in addition to the cases that Mr. Gottstein mentioned. Alpha Tuning is just a completely different case. You have allegations of distinct fraudulent conduct. You needed the insider to be able to ferret out that information for the government. We have no such situation here. There's also the allegation with respect to the defendants that were specifically named that, well, maybe we can get this in under the False Claims Act with respect to the public disclosure bar because, well, there's ongoing conduct. And I'm specifically coming forward and talking about ongoing conduct. His own state court complaint alleged ongoing conduct and asked for an injunction. So the notion that he now could come forward and say, well, now there's new conduct, or later on that there's new conduct, or come in the next time and say there's further new conduct, is not what the public disclosure bar was set up to do. We ask the Court to affirm, and unless the Court has other questions, we have nothing further. Thank you. Thank you very much. The defendants suggest that the names are readily available and that Sykrites did not really bring any insider information to the government, and that's really not the case. As Your Honor suggested, there are thousands of psychiatrists around the country writing... I'm sorry, who suggested? You need something more than just having thousands of names. I don't think so. Okay, I'm sorry. I just asked counsel to address your argument. I didn't suggest anything at all. Okay, well, I'm sorry for a misunderstanding. Why don't you answer his argument? What he says is, I asked a question, how does he answer your argument?  He said the government has all this information because these people, these claims were paid, and you could just look at the prescriptions, you could look at what they were prescribed for and figure it out. And the government had this information, and everything you had you got from the government from a FOIA request. That's what he says. Is that right or wrong? That's incorrect, Your Honor. The only thing we got from the FOIA request was these gross figures about the numbers of prescriptions. It didn't identify any doctors or anything like that. What we then did, and Sykrites has been working in this field for quite some time, almost 10 years, and we have a lot of specific information about what's going on. And we mentioned just about Dr. Matsutani. But we went through, and in fact we have a relationship with an organization called Facing Foster Care in Alaska, which is this group of foster children alumni. And we went and talked to them and found out what doctors were prescribing drugs that were not for medically accepted indication. And we put that together and brought those forward. What do you say to the argument that your theory is nothing more than a per se? Any doctor who prescribed off-label medication to children has per se violated? Well, first off, it's not. No, I mean, it's a per se argument. It is a per se argument, and it's not just off-label. Congress didn't prohibit reimbursement for all off-label prescriptions. It said we're only going to allow reimbursement if there's scientific support in one of these compendia. And it's called a medically accepted indication. If it's not a medically accepted indication, Congress said it's not reimbursable. And so what we did is we went through and ferreted out particular doctors who were prescribing these. And this claims data that he mentioned does actually miss a critical element, which is the diagnosis. Because most of these drugs have at least one, not all of them, but most of them have at least one, medically accepted indication for uses under 18, not all of them do. But the point is, and I think all of the cases basically say when they talk about kind of classes of prospective defendants, they all point to health care fraud and say you can't expect the government to pour through literally millions of claims and ferret out who it is. You know, what about the argument that this is really just a policy dispute and you're trying to turn a key time action to a disagreement, a policy disagreement. This is not a case where they prescribed the drugs and didn't, the drugs weren't provided and somebody collected on the Medicaid cost of the drugs and no drugs were provided. And this was not a case where they were being prescribed, drugs were being prescribed for illegal uses, where a doctor acts as a conduit for providing drugs that are then used for illegal purposes. This is just a disagreement between your group and the defendants as to what is proper medical care. And you know, is this a proper subject of a key time action? I think it is, Your Honor. It's not just a dispute about medical care. It's a question of enforcing Congress's limitation on Medicaid coverage to medically accepted indications and there are very good reasons for that. And I think that's what this is all about. I see I'm out of time, so maybe I should sit down.
judges: Kozinski, Beezer, Paez